1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DAVID ARTHUR DEPONTE,                    Case No.  1:24-cv-00695-KES-HBK (PC)

12                  Plaintiff,                 FINDINGS AND RECOMMENDATIONS TO
                                               PERMIT PLAINTIFF TO PROCEED ON
13          v.                                 COGNIZABLE CLAIM AND DISMISS
                                               REMAINING CLAIMS AND DEFENDANTS[1]
14    STOHL, et al.,
                                               (Doc. No.  41)
15                  Defendants.
                                               FOURTEEN-DAY OBJECTION PERIOD
16

17          Plaintiff David Arthur DePonte is a state prisoner proceeding pro se and *in forma pauperis*

18    in this civil rights complaint under 42 U.S.C. § 1983.  Plaintiff proceeds on his Second Amended

19    Complaint filed July 31, 2024.  (Doc. No. 41, "SAC").  As more fully set forth below, the

20    undersigned finds the SAC states a cognizable First Amendment retaliation claim against

21    Defendant Stohl but no other claims.  Consequently, the undersigned recommends that Plaintiff

22    be allowed to proceed only on this claim and the remaining claims and Defendants be dismissed. .

23                              **SCREENING REQUIREMENT**

24          A plaintiff who commences an action while in prison is subject to the Prison Litigation

25    Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief

26    against a governmental entity, its officers, or its employees before directing service upon any

27    _____

28    [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
      (E.D. Cal. 2023).

defendant.  28 U.S.C. § 1915A.  This requires the court to identify any cognizable claims and dismiss the complaint, or any portion, if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

At the screening stage, the court accepts the factual allegations in the complaint as true, construes the complaint liberally, and resolves all doubts in the plaintiff's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003).  The Court's review is limited to the complaint, exhibits attached, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.  *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014); *see also* Fed. R. Civ. P. 10(c).  A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis.  *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

The Federal Rules of Civil Procedure require only that a complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Nonetheless, a claim must be facially plausible to survive screening.  This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If an otherwise deficient pleading can be remedied by alleging other facts, a pro se litigant is entitled to an opportunity to amend their complaint before dismissal of the action.  *See Lopez v.*

1  *Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d

2  245, 248 (9th Cir. 1995).  However, it is not the role of the court to advise a pro se litigant on how

3  to cure the defects.  Such advice "would undermine district judges' role as impartial

4  decisionmakers."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131

5  n.13.  Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad

6  faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by

7  amendments previously allowed . . . ."  *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892

8  (9th Cir. 2010).

9  **BACKGROUND AND SUMMARY OF OPERATIVE PLEADING**

10  Plaintiff, a state prisoner proceeding pro se and *in forma pauperis*, initiated this action by

11  filing a civil rights complaint under 42 U.S.C. § 1983 in the Northern District of California.

12  (Doc. No. 1).  The case was transferred to the Eastern District of California on June 13, 2024.

13  (Doc. No. 20).  Prior to the Court screening the initial Complaint, Plaintiff filed a First Amended

14  Complaint.  (Doc. No. 26, "FAC").  On July 17, 2024, the undersigned screened Plaintiff's FAC

15  and found that it failed to state any cognizable constitutional claim.  (*See* Doc. No. 35).  The

16  Court advised Plaintiff of the pleading deficiencies and applicable law and afforded Plaintiff the

17  opportunity to file an amended complaint.  (*Id.*).  On July 31, 2024 Plaintiff concurrently filed a

18  Motion to Amend (Doc. No. 40) and a Second Amended Complaint (Doc. No. 41) ("SAC").  The

19  Court granted the Motion to Amend and deemed the SAC as the operative pleading.  (Doc. No.

20  42).

21  The events in the SAC took place at Substance Abuse Treatment Facility ("SATF").  (*See*

22  *generally* Doc. No. 41).  The SAC identifies the following 10 SATF staff as Defendants: (1)

23  Captain Stohl; (2) Associate Warden C. Critchlow; (3) Dispo Officer J. Saucedo; (4) 2nd Watch

24  Sergeant K. Sudano; (5) SNE Peace Officer Padilla; (6) Mental Health Recreational Therapist M.

25  Dube Gonsaga; (7) 2nd Watch Building Peace Officer Soares; (8) Reviewing Authority K.

26  Sevilla; (9) 2nd Watch SNE Peace Officer C. Knight; and (10) Second Watch Lieutenant Sterns.

27  (*Id.* at 1-4, 6).

28  The SAC alleges claims under the First Amendment, Eighth Amendment, and Fourteenth

3

1  Amendment stemming from the following facts, which are presumed true at this stage of the

2  screening process.  (*See id*. at 3-7).[2]  On an unspecified date, Recreational Therapist M. Dube

3  Gonsaga used a piece of Plaintiff's personal mail to issue  Plaintiff a Rules Violation Report

4  ("RVR").  (*Id*. at 3).  On January 16, 2024, Defendant Soares issued Plaintiff a "false" RVR

5  charging  Plaintiff with "3005(a)"[3] which resulted in Plaintiff's removal from various programs

6  and groups  (*Id*.).  Plaintiff vaguely claims the RVRs affect his "liberty" interests "if" he were to

7  go to BPH.[4]

8      Defendant Sudano authorized the "false" RVR.  (*Id*. at 3, 5).  Lieutenant Stohl[5] was the

9  hearing officer for the RVR.  (*Id*. at 5).  On February 24, 2024, Lieutenant Sterns found Plaintiff

10  guilty of overfamiliarity with staff, which Plaintiff contends was not the correct charge.  (*Id*.).  J.

11  Sauceda, an investigative employee assigned to assist Plaintiff with the disciplinary hearing,

12  denied Plaintiff access to camera footage and withheld documentary evidence until the day before

13  the hearing.  (*Id*.).  Plaintiff contends he received inadequate assistance from Sauceda.  (*Id*.).  At

14  the hearing, Defendant Padilla "interfered with [Plaintiff's] legal rights to present document[a]ry

15  evidence and threw [Plaintiff] out of the hearing."  (*Id*.).  Plaintiff was denied the right to question

16  "the defendant."[6]  (*Id*.).

17      After Plaintiff was found guilty of the RVR, Defendant Sterns "fraudulently changed the

18  charge and changed the violated rule number without due process."  (*Id*. at 6).  Sterns also

19  "tampered with legal documents at the hearing and accepted them."  (*Id*.).

20

21  [2] It is not entirely clear from the face of the SAC whether Plaintiff has exhausted his administrative
   remedies.  Plaintiff answers "yes and no" in response to whether the grievance process is completed.  (*See*
22  Doc. No. 41 at 2).  Because Plaintiff is not required to affirmatively plead exhaustion and because Plaintiff
   appears to suggest that the appeals process was not available (not conceded), the Court did not do an order
23  to show cause on the exhaustion issue.  To the extent the affirmative defense is appropriate, Defendant
   may raise it in a motion for summary judgment.
24  [3] The Court infers that Plaintiff is referring to California Code of Regulations Title 15, Section 3005(a),
   which states that "(a) Inmates and parolees shall obey all laws, regulations, and local procedures, and
25  refrain from behavior which might lead to violence or disorder, or otherwise endangers facility, outside
   community or another person."
26  [4] The Court infers that Plaintiff is referring to the Board of Parole Hearings.
   [5] The Court infers Plaintiff intended to write "Lieutenant Sterns," who is described elsewhere in the SAC
27  as having held the RVR disciplinary hearing, whereas Captain Stohl reviewed Plaintiff's grievance
   regarding the disciplinary hearing.
28  [6] It is unclear to whom Plaintiff is referring.

4

1  Defendant Stohl removed Plaintiff from his assigned yard "knowing there was no rule or
2  law broken." (*Id*.). After Plaintiff filed a 602 grievance against Stohl, Plaintiff was "jumped by
3  two inmates." (*Id*.). The day after Plaintiff filed a second grievance against Stohl for authorizing
4  an illegal RVR, Stohl had Plaintiff put into a crisis center even though Plaintiff was not suicidal
5  or homicidal, which affected Plaintiff's college assignment. (*Id*. at 6-7).

6  As relief, Plaintiff seeks a Court order instructing SATF to remove the RVR from his file,
7  $100,000 in damages from each Defendant, for SATF to pay for Plaintiff's college, and an
8  additional $500,000 for emotional damage and liberty interest. (*Id*. at 7). Plaintiff also wants his
9  personal letter to be returned. (*Id*.).

10  **APPLICABLE LAW AND ANALYSIS**

11  **A**. **Fourteenth Amendment Due Process**

12  The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life,
13  liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of
14  procedural due process apply only to the deprivation of interests encompassed by the Fourteenth
15  Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).
16  "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest
17  protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of
18  process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa*
19  *Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

20  A prisoner is entitled to certain due process protections when he is charged with a
21  disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (*citing Wolff v.*
22  *McDonnell*, 418 U.S. 539, 564-571 (1974)). "Such protections include the rights to call
23  witnesses, to present documentary evidence and to have a written statement by the fact-finder as
24  to the evidence relied upon and the reasons for the disciplinary action taken." *Id*. These
25  procedural protections, however, "adhere only when the disciplinary action implicates a protected
26  liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on
27  the inmate in relation to the ordinary incidents of prison life.'" *Id*. (quoting *Sandin v. Conner*,
28  515 U.S. 472, 484 (1995)); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Prisoners bear

5

1    the burden to demonstrate that they did not receive due process during their disciplinary hearing.

2    *See Parnell v. Martinez*, 821 Fed. Appx. 866, 866-867 (9th Cir. 2020).

3        Although the level of the hardship must be determined on a case-by-case basis, and "[i]n

4    *Sandin's* wake the Courts of Appeals have not reached consistent conclusions for identifying the

5    baseline from which to measure what is atypical and significant in any particular prison system,"

6    *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:

7
8
9
10

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

11    *Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*,

12    706 F.3d 1052, 1064-65 (9th Cir. 2013).  Only if the prisoner alleges facts sufficient to show a

13    protected liberty interest must courts next consider "whether the procedures used to deprive that

14    liberty satisfied Due Process."  *Ramirez*, 334 F.3d at 860.  Where no protected liberty interest is at

15    stake, the minimum requirements of due process apply, which require only that "the findings of

16    the prison disciplinary board (be) supported by some evidence in the record." *Superintendent v.*

17    *Hill*, 472 U.S. 445, 454-55 (1985).

18             1.  <u>No Liberty Interest Alleged</u>

19        It is unclear whether Plaintiff is serving an indeterminate or determinate sentence.

20    Nonetheless, Plaintiff fails to set forth facts sufficient to demonstrate that the deprivations he

21    suffered because of his disciplinary conviction imposed the type of "atypical and significant

22    hardships" required by *Sandin* to invoke liberty interests entitled to *Wolff*'s procedural safeguards.

23    He alleges that the RVR resulted in him losing access to certain prison programs, but it is well-

24    settled this does not amount to an atypical and significant hardship under *Sandin*.  *See, e.g, Ivy v.*

25    *Wingo*, 2020 WL 5709278, at *6 (S.D. Cal. Sept. 24, 2020) (finding that "90 days of lost good

26    time credit, [loss of] privilege group, and package privileges" did not impose "atypical and

27    significant hardships" on plaintiff sufficient to trigger due process protections).  The SAC's vague

28    and speculative contention that Plaintiff will face greater difficulty obtaining parole is likewise

insufficient to trigger the due process protections of *Wolff*.  *See Bennett v. Curry*, 386 F. App'x 645, 646 (9th Cir. 2010) (dismissing due process claim where plaintiff found "unsuitable for parole for several independently adequate reasons and not only because of the disciplinary record he seeks to challenge.  Because his disciplinary record did not 'alter the balance' in his parole suitability determination, its effect if any on the duration of his sentence 'is simply too attenuated to invoke the procedural guarantees of the Due Process Clause.'") citing *Sandin*, 515 U.S. at 487.  Because there are no facts to indicate Plaintiff's RVR guilty finding "will inevitably affect the duration of his sentence" Plaintiff has not established a liberty interest triggering the due process protections of *Wolff*.  Thus, to the extent the SAC alleges due process violations based on Plaintiff's loss of privileges or the potential negative impacts on Plaintiff's consideration for parole, the SAC fails to state a claim.

## 2.   No Claim Based on False RVR

Moreover, the filing of a false disciplinary report by a prison official against a prisoner is not a per se violation of the prisoner's constitutional rights.  *See Muhammad v. Rubia*, 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  If a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.") (internal citation omitted)), *aff'd* 453 F. App'x 751 (9th Cir. 2011); *Harper v. Costa*, 2009 WL 1684599, at *2-3 (E.D. Cal. June 16, 2009) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California . . . have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983."), *aff'd* 393 F. App'x 488 (9th Cir. 2010).  Thus, to the extent Plaintiff alleges a due process violation based on the filing of a false RVR against him, this alone fails to state a Fourteenth Amendment claim.

## 3.   No Claim Based on Unfair Hearing

Plaintiff contends that his due process rights were violated at the RVR hearing because "Assistant Padilla interfered with [his] legal right to present documentary evidence and threw

1  [him] out of the hearing." (Doc. No. 41 at 5). Plaintiff "was [also] denied the right to question

2  the defendant." (*Id*.). And Defendant Sterns "tampered with legal documents presented at the

3  hearing and accepted them." (*Id*.). Plaintiff fails to state a claim based on any of those

4  allegations.

5      One of the constitutional rights afforded a prisoner in a disciplinary hearing is "to . . .

6  present documentary evidence in his defense when permitting him to do so w[ould] not be unduly

7  hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Here, Plaintiff

8  contends that he was not permitted to present unspecified documentary evidence in his defense.

9  However, the SAC does not allege facts indicating that Plaintiff was completely precluded from

10  presenting documentary evidence, nor does it assert facts explaining the relevance of the excluded

11  evidence, any reasons the evidence was excluded, or how its exclusion prejudiced him. Indeed,

12  Plaintiff acknowledges he was permitted to view the camera footage and obtain documentary

13  evidence "the day before the hearing." (Doc. No. 41 at 5). Thus, Plaintiff's mere conclusory

14  assertion that the exclusion of unspecified documentary evidence violated his due process rights

15  is insufficient to state a claim. *See Crutcher v. Cate*, 2012 WL 6023752, at *6 (C.D. Cal. July 30,

16  2012), report and recommendation adopted, 2012 WL 6022865 (C.D. Cal. Dec. 4, 2012) (noting

17  that "a prisoner's right to call witnesses and present documentary evidence at a disciplinary

18  hearing is not unlimited" and that "[p]rison officials must have the necessary discretion to keep

19  the hearing within reasonable limits" including limiting presentation of documentary evidence).

20      As to his claim that he was unable to question "the defendant," Plaintiff similarly does not

21  specify who the witness was (since presumably he was the defendant in the disciplinary hearing),

22  whether they testified at the hearing, or who denied his request to question them and why. "The

23  Supreme Court's decision in *Wolff* bestows a substantial amount of discretion upon prison

24  officials to decide whether and when to call live witnesses at a disciplinary hearing." *Buren v.*

25  *Waddle*, 2016 WL 5890030, at *2 (E.D. Cal. Oct. 11, 2016). Prison officials may choose to

26  refuse an inmate's request to call witnesses for reasons of "irrelevance, lack of necessity, or the

27  hazards presented in individual cases." *See Wolff*, 418 U.S. at 566. In *Wolff* the court suggested

28  it would be "useful," but did not require, that prison officials provide written   reasons for denying

an inmate the right to call live witnesses. *Baxter v. Palmigiano*, 425 U.S. 308, 323 (1976). Meanwhile, "[A]s a general rule, inmates 'have no constitutional right to confront and cross-examine adverse witnesses' in prison disciplinary hearings." *Santibanez v. Havlin*, 750 F. Supp.2d 1121, 1128 (E.D. Cal. 2010). Thus, because there is no constitutional right to call or cross-examine adverse witnesses, even assuming Plaintiff's request to do so was denied, he fails to state a cognizable constitutional claim.

### 4. No Claims Based on Guilty Finding at Disciplinary Hearing

Liberally construed, the SAC contends that Defendant Sterns' guilty finding at the disciplinary hearing constituted a due process violation. (Doc. No. 41 at 5). However, "[t]he standard [for upholding a disciplinary hearing result] is not particularly stringent and the relevant inquiry is whether 'there is any evidence in the record that could support the conclusion reached' . . . ." *McDaniel v. Chavez*, 2014 WL 1333991, at *6 (E.D. Cal. Apr. 3, 2014) (citing *Hill*, 472 U.S. at 455-56).

The SAC does not allege that there was no evidence in the record that could support Plaintiff's guilty finding. Rather, the SAC appears to assert that Plaintiff was cited for the wrong charge because Section 3005(a) "had nothing to do with the specific act: overfamiliarity." (Doc. No. 41 at 5). As noted above, Plaintiff also disputes certain restrictions imposed on him at the hearing, but none of these amount to a due process violation. Because the SAC does not assert facts showing that Plaintiff was found guilty at the disciplinary hearing without at least "some evidence" in support, it fails to state a Fourteenth Amendment due process claim based on Plaintiff's guilty finding.

### 5. No Claim Based On Failure to Reverse a Guilty Finding

Liberally construed, the SAC also alleges that Defendant Critchlow, the Associate Warden, and Defendant Stohl violated Plaintiff's due process rights because they did not reverse Plaintiff's guilty finding in response to Plaintiff's filing of a grievance. (*Id*. at 4).

As noted above, the Court does not find that there was any underlying procedural deficiency in the disciplinary hearing that resulted in Plaintiff being found guilty of the RVR. Thus, Defendant Critchlow's conclusion to that effect was not erroneous. Indeed, "[a] prison

1    official's denial of a grievance does not itself violate the constitution." *Penton v. Johnson*, 2019

2    WL 6618051, at *6 (E.D. Cal. Dec. 5, 2019) (quoting *Evans v. Skolnik*, 637 F. App'x 285, 288

3    (9th Cir. 2015)).  "An allegation that a prison official inappropriately denied or failed to

4    adequately respond to a grievance, without more, does not state a claim under § 1983." *Evans*,

5    637 F. App'x at 288, citing *Ramirez*, 334 F.3d at 860 ("Ramirez's claimed loss of a liberty

6    interest in the processing of his appeals does not satisfy this standard, because inmates lack a

7    separate constitutional entitlement to a specific prison grievance procedure."); *see also Alford v.*

8    *Gyaami*, 2015 WL 3488301, at *10 n.2 (E.D. Cal. June 2, 2015) ("Even if prison officials delay,

9    deny, or erroneously screen out a prisoner's inmate grievance, they have not deprived him of a

10   federal constitutional right."); *Wright v. Shannon*, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2,

11   2010) (allegations that prison officials denied or ignored inmate appeals failed to state a

12   cognizable claim under the First Amendment).  As noted above, Plaintiff did not suffer any

13   deprivation of his due process rights at the disciplinary hearing, and any deficiency in Defendants

14   Critchlow and Stohl's response to Plaintiff's grievance does not give rise to a Fourteenth

15   Amendment due process claim.

16                     6.    No Claim Based on Ineffective Assistance of an Investigative Employee

17          Finally, the SAC asserts that Plaintiff's due process rights were violated because

18   Defendant Sauceda, the investigative employee assigned to assist him, denied Plaintiff's "right to

19   camera footage [and] withheld document[a]ry evidence until the day before the hearing."  (*See*

20   Doc. No. 41 at 5).  While Plaintiff was assigned an investigative employee, he has not shown that

21   he was either illiterate or that his case was "unusually complex" such that federal due process

22   entitled him to the assistance of an investigative employee.  *See Andrade v. Swarthout*, 2012 WL

23   2531997, at *7 (E.D. Cal. June 29, 2012) (finding no due process violation where plaintiff "did

24   not provide sufficient evidence indicating his issue was complex [enough] to require a due

25   process right to an investigative employee"); *see also Uribe v. Taylor*, 2012 WL 4953176, at *5

26   (E.D. Cal. Oct. 15, 2012) ("plaintiff has no due process rights to the assistance of an investigative

27   employee and thus, his claim that [his investigative employee] failed to conduct an adequate

28   investigation or to obtain a staff assistant for plaintiff in connection with the disciplinary charge

1    fails to state a cognizable due process claim.").  Even assuming Plaintiff was entitled to the

2    assistance of an investigative employee, the SAC fails to establish that Defendant Sauceda's

3    alleged deficiencies as an investigative employee harmed him; the facts do not support an

4    inference that if Sauceda had permitted Plaintiff access to the unspecified camera footage, or

5    provided the unspecified documentary evidence sooner, the result at the disciplinary hearing

6    would have been different.[7]  Thus the SAC fails to allege a cognizable due process claim.  *Id*.

7    (denying plaintiff's due process claim where his "amended complaint . . . does not allege facts

8    explaining what information was lost or unavailable to him" due to investigative employee's

9    failure to interview a witness and provide Spanish-language interpreter.).

10          Thus, because the SAC fails to articulate a liberty interest that implicates the due process

11   clause or any actions by Defendant that constituted due process violations, the FAC fails to state a

12   viable Fourteenth Amendment claim.

13                        **B. First Amendment Retaliation**

14          It is clear prisoners have a First Amendment right to file a grievance or civil rights

15   complaint against correctional officials.  *Brodheim v. Cry*, 584 F. 3d 1262, 1269 (9th Cir. 2009).

16   To state a claim for First Amendment retaliation, a plaintiff must allege five elements: (1) he

17   engaged in protected activity; (2) the state actor took an adverse action against the plaintiff; (3) a

18   causal connection between the adverse action and the protected conduct; (4) the defendant's

19   actions would chill or silence a person of ordinary fitness from protected activities; and (5) the

20   retaliatory action did not advance a legitimate correctional goal. *Chavez v. Robinson*, 12 F.4th

21   978, 1001 (9th Cir. 2021) (quoting *Rhodes*, 408 F.3d at 567–68).  A retaliatory motive may be

22   shown by the timing of the allegedly retaliatory act or other circumstantial evidence, as well as

23   direct evidence.  *Bruce v. Ylst,* 351 F.3d 1283, 1288–89 (9th Cir.2003); *McCollum v. Ca. Dep't*

24   *of Corr. And Rehab*., 647 F.3d 870, 882 (9th Cir. 2011).  Mere speculation that a defendant acted

25   out of retaliation is not sufficient.  *Wood v. Yordy,* 753 F.3d 899, 905 (9th Cir. 2014) (citing

26   cases).

27   _____

28   [7] Indeed, without knowing what either the camera footage or the documentary evidence contained, the
     Court cannot infer that the materials were even relevant, much less exculpatory.

1    Here, Plaintiff implies that he suffered two adverse actions because of his protected

2    conduct of filing a grievance against Defendant Stohl.  First, sometime after he filed a grievance

3    against Stohl, Plaintiff "was jumped by two inmates."  (*Id*. at 6).  While a retaliatory motive may

4    be shown by the timing of an allegedly retaliatory act, here Plaintiff does not specify the

5    proximity in time between his filing of a grievance against Stohl and the attack by the two

6    inmates.  He merely notes that one happened after the other.  (*See id*.).  At best, Plaintiff's

7    inference of a connection between these two events, without any further evidence, is mere

8    speculation, which is insufficient to support a First Amendment claim.  *Wood*, 753 F.3d at 905.

9    Second, Plaintiff contends that the day after he filed a second grievance against Stohl,

10   Stohl "had [Plaintiff] put into a crisis center."  (*Id*.).  Plaintiff states that he "was not suicidal or

11   homosidal [sic]."  (*Id*. at 6-7).  Based on the timing of Defendant Stohl's actions, and the fact that

12   Plaintiff was neither a threat to himself nor others at the time, the Court can infer that Stohl's

13   actions were driven by a retaliatory motive.  Nor can the Court discern any legitimate correctional

14   objective in placing an inmate in the confines of a crisis bed when he is not a threat to himself or

15   others.  Thus, the Court finds that the SAC adequately alleges a First Amendment retaliation

16   claim against Defendant Stohl sufficient to survive the "low threshold" for *sua sponte* screening

17   pursuant to 28 U.S.C. Sections 1915(e)(2) and 1915A(b). *See Wilhelm v. Rotman*, 680 F.3d 1113,

18   1123 (9th Cir. 2012).  Thus, the Court will recommend that Plaintiff be permitted to proceed on

19   this claim.

20   Accordingly, it is **RECOMMENDED**:

21   Plaintiff's Second Amended Complaint be permitted to proceed only on Plaintiff's First

22   Amendment retaliation claim against Defendant Stohl and all other claims and Defendants be

23   dismissed.

24                                          **NOTICE TO PARTIES**

25   These Findings and Recommendations will be submitted to the United States District

26   Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

27   after being served with a copy of these Findings and Recommendations, a party may file written

28   objections with the Court.  *Id*.; Local Rule 304(b).  The document should be captioned,

1  "Objections to Magistrate Judge's Findings and Recommendations." The assigned District Judge

2  will review these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's

3  failure to file objections within the specified time may result in the waiver of certain rights on

4  appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

5

6  Dated:    August 28, 2024

7                                              HELENA M. BARCH-KUCHTA
                                               UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28